IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

|  |  |
|---|---|
| ERIC B. FROMER CHIROPRACTIC, INC., | * |
| Plaintiff, | Case No.: GJH-17-3801 |
| v. | * |
| INOVALON HOLDINGS, INC., *et al.*, | * |
| Defendants. | * |

## MEMORANDUM OPINION

Plaintiff Eric B. Fromer Chiropractic, Inc., ("Fromer" or "Plaintiff") on behalf of itself and others similarly situated, brings this putative class action against Defendants Inovalon Holdings, Inc., Inovalon, Inc., and Inovalon SME, LLC (collectively, "Inovalon" or "Defendants") alleging that Defendants sent Plaintiff an unsolicited advertisement via facsimile transmission in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227. ECF No. 1. Presently pending before the Court is Plaintiff's "Placeholder" Motion to Certify Class, ECF No. 3, to which Defendants have not responded, and Defendants Motion to Dismiss, ECF No. 22. No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion to Dismiss is granted, in part, and denied, in part, and the case is stayed pending resolution of Defendants' Petition for Expedited Declaratory Ruling presently pending before the Federal Communications Commission ("FCC"). ECF No. 22-4.

1

**I.     BACKGROUND[1]**

The TCPA makes it unlawful to send an "unsolicited advertisement" by fax unless 1) the unsolicited advertisement is from a sender with an established business relationship with the recipient, 2) the sender obtained the recipient's fax number through either voluntary communication or public distribution of the recipient's number, and 3) the unsolicited advertisement contains an opt-out notice in accordance with paragraph (2)(D) of that section. *See* 47 U.S.C. § 227(b)(1)(C). The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." § 227(a)(5).

On or about November 14, 2017, Defendants sent an unsolicited facsimile transmission ("the Fax") to Plaintiff. ECF No. 1 ¶ 12. The Fax offers medical providers, like Plaintiff, free access to Inovalon's electronic record retrieval system. ECF No. 1-1 (copy of the Fax). Plaintiff alleges that it did not give prior express invitation or permission to Defendants to send the Fax and that Plaintiff does not have an established business relationship with Defendants to otherwise authorize the Fax. *Id.* ¶ 14. In addition to being unsolicited, the Fax does not display an opt-out notice as required by the TCPA. *Id.* ¶ 15. Plaintiff alleges that it lost paper and toner consumed in printing the Fax. *Id.* ¶ 35. Plaintiff also wasted time in receiving, reviewing, and routing the Fax, and receipt of the Fax interrupted Plaintiff's interest in being left alone. *Id.* Plaintiff further alleges that Defendants profit and benefit from the sale of the products, goods and services advertised in the Fax. *Id.* ¶ 13. According to Plaintiff, Defendants have faxed the same, or similar, unsolicited fax in violation of the TCPA to at least 40 other recipients without first obtaining the recipient's express invitation or permission. *Id.* ¶ 15.

---
[1] Unless otherwise noted, the facts are taken from the Complaint and assumed to be true.

Plaintiff filed its putative class action on December 26, 2017. On February 19, 2018, Defendants filed a petition with the FCC seeking an expedited declaratory ruling that because Inovalon does not sell the products or services mentioned in the Fax to recipients of the Fax, the Fax was not an "unauthorized advertisement" otherwise prohibited by the TCPA. *See In re Inovalon, Inc.'s Pet. for Expedited Declaratory Ruling*, CG Docket No. 02-278 (FCC Feb. 19, 2018) (ECF No. 22-4). In its Petition, Defendants ask the FCC to declare:

1. Faxes sent by a health insurance plan's designee to a patient's medical provider, pursuant to an established business relationship between the health plan and provider, requesting patient medical records are not advertisements under the TCPA; and
2. Faxes that offer the free collection and/or digitization of patient medical records, and which do not offer any commercially available product or service to the recipients are not advertisements under the TCPA.

ECF No. 22-4.[2]

## II. STANDARD OF REVIEW

### A. Motion to Dismiss Pursuant to Rule 12(b)(1)

A motion to dismiss based on lack of subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), raises the question of whether the court has the competence or authority to hear and decide a particular case. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). The court may properly grant a motion to dismiss for lack of subject-matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Id.* (citing *Crosten v. Kamauf*, 932 F.Supp. 676, 679 (D. Md. 1996)). A federal court does not have subject-matter jurisdiction where Article III standing is not satisfied, *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017), *cert. denied sub nom. Beck v. Shulkin*, 137 S. Ct. 2307 (2017), and

---

[2] Because Defendants do not argue that the parties have an "established business relationship" at this time, the first issue is not relevant to Defendants' Motion to Dismiss herein.

must determine if it has subject matter jurisdiction before ruling on the merits of the case. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007).

**B. Motion to Dismiss Pursuant to Rule 12(b)(6)**

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint," and "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). To survive a motion to dismiss invoking Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544. 570 (2007)).

## III. DISCUSSION

Defendants move to dismiss Plaintiff's complaint for lack of subject-matter jurisdiction or for failure to state a claim upon which relief can be granted. Alternatively, Defendants ask the Court to stay the case pending resolution of its FCC Petition for Expedited Declaratory Ruling.

**A. Lack of Subject-Matter Jurisdiction**

Article III of the Constitution limits federal judicial powers to "cases and controversies," and a plaintiff may only seek redress for a legal wrong if that plaintiff 1) suffered an injury-in-fact 2) the plaintiff's injury is fairly traceable to the defendant's conduct and 3) the injury is likely to be redressed by a favorable judicial decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A plaintiff establishes injury-in-fact if he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *See Spokeo v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting

4

*Lujan*, 504 U.S. at 560). Because injury-in-fact is a Constitutional requirement, Congress cannot simply grant, by statute, the right to sue to a plaintiff who would not otherwise have legal standing. *Spokeo*, 136 S. Ct. at 1547–48.

In *Spokeo, Inc. v. Robins*, the Supreme Court considered when a plaintiff's injury, recognized through an act of Congress, is sufficiently "concrete" to meet the injury-in-fact requirement.[3] The Court stated that a "concrete injury must be *de facto*; that is, it must actually exist." *Id.* at 1549 (citing Black's Law Dictionary 479 (9th ed. 2009)). Although tangible harms are easier to recognize, the Court reiterated that intangible harms can nevertheless be concrete. In determining whether an intangible harm is sufficient to establish standing, the Court stated that "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* Because Congress is well positioned to identify such intangible harms, Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* (citing *Lujan*, 504 U.S. at 578). However, such harms must go beyond bare procedural violations. *Id.* at 1550.

Defendants argue that "Plaintiff's allegations of harm rest on the intangible injury of receiving a fax without the proper opt-out notice," and, as a result, Plaintiff has not pleaded a "concrete and particularized" injury.[4] ECF No. 22-1 at 6.[5] According to Defendants, following

---

[3] While *Spokeo* considered whether a procedural violation of the Fair Credit Reporting Act was sufficient to satisfy the injury-in-fact requirement, the Court's guidance is equally applicable to whether Plaintiff's claim under the TCPA satisfies the injury-in-fact requirement.

[4] Defendants also challenge Plaintiff's standing by arguing that because Plaintiff is a publically-listed medical provider, "not a consumer receiving countless harassing phone calls or faxes at her home," Plaintiff falls outside of the TCPA's zone of interest. *See* ECF No. 22-1 at 10. However, the TCPA itself is not expressly limited to individual consumers, and such a finding would be inapposite with cases discussed herein that held that corporate plaintiffs had standing to pursue TCPA claims. *See* 47 U.S.C. § 227(b)(3) (noting that a "person *or entity*" may bring a private right of action for TCPA violations) (emphasis added).

[5] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

*Spokeo*, "[a] distinct schism has developed" as to whether a TCPA statutory violation is a sufficient injury to establish Article III standing. ECF No. 22-1 at 7 n.5 (citing *Gorss Motels, Inc. v. Sysco Guest Supply, LLC*, No. 3:16-CV-01911-VLB, 2017 WL 3597880, at *4–5 (D. Conn. Aug. 21, 2017)). In response, Plaintiff argues that following *Spokeo*, at least 80 district court decisions have found Article III standing in TCPA cases, including 29 cases involving fax transmissions. *See* ECF No. 23 at 6. While the Fourth Circuit has yet to address the issue, three other circuits have determined that, post-*Spokeo*, a TCPA statutory violation is sufficient to establish Article III standing. *See Florence Endocrine Clinic, PLLC v. Arriva Medical, LLC*, 858 F.3d 1362, 1366 (11th Cir. 2017) ("Because the clinic's fax machine was occupied and rendered unavailable for legitimate business while processing the unsolicited fax, the clinic established that it suffered a concrete injury."); *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1042–43 (9th Cir. 2017); *Susinno v. Work Out World, Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) (holding that receipt of an unsolicited call was a "concrete, albeit intangible" injury because the injury was both one Congress intended to prevent in enacting the TCPA and similar to privacy interests that traditional common law causes of action sought to prevent); *see also Wendell H. Stone Co., Inc. v. Chesapeake Plywood, LLC*, No. MJG-16-2821, 2017 WL 1550242, at *2 (D. Md. May 1, 2017) (citing *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 639 (4th Cir. 2005) (noting that the Fourth Circuit would likely conclude that receipt of an unsolicited fax in violation of the TCPA is a sufficient injury to confer Article III standing because "the Fourth Circuit decided—for insurance coverage purposes—that a claim against an insured for sending a fax in violation of the TCPA was a covered claim for "'property damage'").

6

In *Van Patten*, the Ninth Circuit, relying on *Spokeo*, determined that a "plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified'" to establish a concrete injury. *See id.* at 1043 (citing *Spokeo* at 1549). Though *Van Patten* concerned the receipt of unsolicited text messages, its holding applies equally to unsolicited fax transmissions. *See id.* ("Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and *fax advertisements*.") (emphases added). And unlike unsolicited text messages, recipients of unsolicited fax transmissions sustain tangible, albeit minor, injuries. *See JWD Auto., Inc. v. DJM Advisory Group LLC*, 218 F. Supp. 3d 1335, 1340 (M.D. Fla. 2016) ("At least some of the particularized harm alleged in Plaintiff's Complaint—loss of toner and paper and the unwanted temporary occupation of Plaintiff's fax machine and telephone line—is tangible in nature. Such tangible harm . . . is sufficient for standing purposes, even if *de minimis*."). The vast majority of courts agree that receipt of an unsolicited fax, sent in violation of TCPA statutory requirements, results in a concrete injury necessary to establish Article III standing, and the Court need not parse or distinguish the select cases cited by Defendant to the contrary.[6] *See Cordoba v. DirectTV, LLC*, 320 F.R.D. 582, 591 (N.D. Ga. 2017) (citing *Van Patten*, 847 F.3d at 1043) ("an overwhelming majority of courts . . . have continued to hold that the mere receipt of faxes, telemarketing calls, and/or text messages in violation of the TCPA constitutes sufficient harm for purposes of Article III standing")).

Defendants attempt to distinguish Plaintiff's Complaint from other TCPA cases that survived standing challenges by arguing that Plaintiff cannot establish standing because his injury—receipt of an unsolicited fax—would be the same regardless of whether the Fax

---

[6] Notably, as Plaintiff points out, *Van Patten* appears to overrule the California district court cases cited by Defendants that held that statutory TCPA violations were insufficient to establish a concrete injury. *See* ECF No. 23 at 10–11.

contained the proper opt-out notice. ECF No. 22-1 at 7.[7] In support, Defendants rely on *ARcare v. Qiagen N. Am. Holdings, Inc.*, No. 16-7638 PA (ASX), 2017 WL 449173, at *3 (C.D. Cal. Jan. 19, 2017). In that case, which was a similar Junk Fax action, the district court found no injury had occurred because, had the faxes "fully complied with the TCPA, Plaintiff would have lost the same amount of ink, toner, paper and time." *Id.* at *4. While the Court found that the plaintiff's injury was sufficiently concrete to meet the injury-in-fact requirement under *Spokeo*, the court nonetheless rejected the plaintiff's standing argument on traceability grounds:

> The TCPA does not prohibit the sending of any fax; it applies only to unsolicited advertisements which do not include an appropriate opt-out notice. *See* 47 U.S.C. §§ 227(a)(5), 227(b)(2)(D). Plaintiff does not attempt to show how it was injured by the receipt of faxes with opt-out notices which failed to fully comply with the TCPA, instead alleging harm which would result from the receipt of any fax.

*Id.*

Plaintiff suggests that some courts have considered that the Ninth Circuit's decision in *Van Patten* implicitly overturned *ARcare*. *See* ECF No. 23 at 10 (citing *Cordoba*, 320 F.R.D. at 595 n.15. The Court disagrees. In *ARcare,* like *Van Patten*, the district court found that a procedural violation of the TCPA constituted a concrete injury for Article III standing purposes. The district court's traceability holding was not addressed in *Van Patten* because the TCPA violation there—receipt of unsolicited text messages—did not depend on whether the text was accompanied by a TCPA-required opt-out notice. However, the Court finds that *ARcare* is unpersuasive because it unjustifiably narrows the concrete injury recognized by Congress in the TCPA—receipt of an unsolicited fax—and imposes a heighted causation requirement not

---

[7] Defendants' argument is based on the misguided assumption that Plaintiff only alleges that Defendants violated the TCPA by failing to include an opt-out notice in the fax. *See* ECF No. 27 at 2 ("None of these injuries relate to the violation Plaintiff actually alleges Inovalon committed, which is that the fax in question did not contain the 'opt-out notice' required to assert defenses under the Act.") (internal quotation marks omitted). Plaintiff's Complaint clearly alleges that Defendants sent an unsolicited fax *and* sent a fax without the required opt-out notice. Though Defendants' suggest that they will argue that Plaintiff consented to receive the Fax at the summary judgment stage, ECF No. 27 at 4 n.3, the Court presumes that the Fax was unsolicited at this time.

8

supported by Article III standing case law. *See Gorss Motels, Inc.*, 2017 WL 3597880, at *6 ("It is paradoxical that the court in *ARcare* found that lost paper, toner, ink, and time, are sufficiently concrete and particularized . . . but then held that Plaintiff could not establish a causal connection . . . because it has alleged a bare procedural violation . . . divorced from any concrete harm.") (internal citation and quotation marks omitted); *see also id.* (noting that "the majority of courts have rejected [*ARcare's* traceability] argument") (citation omitted). It is therefore well established that the mere receipt of an unsolicited fax in violation of the TCPA constitutes a concrete injury sufficient to satisfy Article III's injury in fact requirement.[8]

### B. Failure to State a Claim

In 2006, the FCC promulgated a rule clarifying what constitutes an advertisement under the TCPA. *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 FR 25967-01 (May 3, 2006) (the "2006 Rule"). Under the 2006 Rule, the FCC determined that free goods are advertisements because they often serve as a pretext to the sender advertising commercial products and goods to the recipient:

> [Facsimile] messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition. In many instances, "free" seminars serve as a pretext to advertise commercial products and services. . . . Therefore, facsimile communications regarding such free goods and services, if not purely "transactional," would require the sender to obtain the recipient's permission beforehand, in the absence of an EBR [established business relationship].

*Id.* at 25973. Defendants argue that under the 2006 Rule, the Fax cannot be an advertisement because the Fax is not a precursor to an eventual sale of goods or services to the Plaintiff, does

---

[8] Because the Court finds that Plaintiff has suffered a *tangible* injury through receipt of the fax, the Court need not consider Defendants' argument that Plaintiff has not suffered a sufficiently concrete *intangible* injury. *See* ECF No. 22-1 at 8(arguing that Plaintiff has not suffered an intangible injury because it does not possess the same privacy interest that the TCPA was designed to protect).

9

not "have profit as an aim," and does not have a commercial purpose. *See* ECF No. 22-1 at 12 (citing *Sandusky Wellness Ctr., LLC v.Medco Health Sols., Inc.*, 788 F.3d 218, 222 (6th Cir. 2015)).

Subsequent to Defendants filing the Motion to Dismiss, the Fourth Circuit directly addressed 1) whether district courts must follow the 2006 Rule and 2) whether a fax must have a commercial purpose in order to be an advertisement. *See Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 883 F.3d 459 (4th Cir. 2018) (holding that a fax offering a free Physician's Desk Reference eBook was an unsolicited advertisement under TCPA). On the first issue, the Fourth Circuit held that under the Hobbs Act, 28 U.S.C. § 2342(1), a district court has no power to ignore the 2006 Rule even if the district court thinks that the plain language of the TCPA is unambiguous; the district court must defer to the FCC's interpretation. *See id.* at 465 ("By refusing to defer to the FCC rule and applying Chevron analysis instead, the court acted beyond the scope of its congressionally granted authority.").

On the second issue, the Fourth Circuit stated that "[f]rom a natural reading of the text of the regulation, we get this simple rule: faxes that offer free goods and services are advertisements under the TCPA." *Id.* at 467. The Court found that a fax does not need to have a commercial purpose to be considered an "unsolicited advertisement" because the 2006 Rule "adopted a prophylactic presumption that fax messages offering free goods or services *are* advertisements and thus *are* prohibited by § 277." *Id.* at 467 (citing *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 100–01 (2d Cir. 2017) (Leval, J. concurring) (emphasis in *Boehringer*). Therefore, Defendants' argument that it does not sell its "Electronic Health Records Interoperability solution" mentioned in the Fax to health care providers like Plaintiff is irrelevant. *See* ECF No. 22-1 at 14.

As the Fourth Circuit recognized, "requiring a fax to propose a specific commercial transaction on its face takes too narrow a view of the concepts of commercial activity and promotion, and ignores the reality of many modern business models." *Carlton & Harris*, 883 F.3d at 468. It is certainly plausible that Defendants stand to profit from Plaintiff utilizing its services, even if at no cost Plaintiff. By simply offering its services to Plaintiff free of charge, the Fax could constitute an unsolicited advertisement prohibited by the TCPA. Defendants also argue that Plaintiff's Complaint failed to provide sufficient facts to support its conclusory assertion that the Fax was an advertisement. ECF No. 27 at 8. But Plaintiff attached the actual fax to the Complaint, and the Court is hard-pressed to think of what additional factual allegations would more clearly suggest that Defendants have offered Plaintiff a commercially-available service through the use of a fax machine in order to defeat a 12(b)(6) motion. Therefore, Defendants' Motion to Dismiss is denied.

**C. Stay Pending FCC Petition for Expedited Declaratory Ruling**

Alternatively, Defendants request the Court to stay the case under the doctrine of primary jurisdiction until the FCC resolves Defendants' pending petition seeking confirmation that the Fax is not an advertisement under the TCPA. ECF No. 22-1 at 17. The doctrine of primary jurisdiction "is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993). "Generally speaking, the doctrine is designed to coordinate administrative and judicial decision-making by taking advantage of agency expertise and referring issues of fact not within the conventional experience of judges or cases which require the exercise of administrative

discretion." *See Environmental Tech. Council v. Sierra Club*, 98 F.3d 774, 789 (4th Cir. 1996); *see also id.* (noting that referral under the doctrine of primary jurisdiction is reviewed for abuse of discretion).

Courts often consider four factors in determining whether to stay or dismiss an action in favor of the jurisdiction of an administrative agency:

> (1) whether the question at issue is within the conventional experience of judges or it is within the agency's particular field of expertise;
> (2) whether the question at issue is particularly within the agency's discretion;
> (3) whether there exists a substantial danger of inconsistent rulings; and
> (4) whether a prior application to the agency has been made.

*See Cent. Tel. Co. of Va. v. Sprint Communications Co. of Va. Inc.*, 759 F. Supp. 2d 772, 786 (E.D. Va. 2011) *aff'd* 715 F.3d 501 (4th Cir. 2013) *cert. denied* 571 U.S. 969 (2013).

Plaintiff argues that the doctrine of primary jurisdiction is inapplicable because the Court does not have jurisdiction to interpret the meaning of "advertisement" as defined in the TCPA. ECF No. 23 at 23 (citing 73 C.J.S. Public Admin. Law & Proc. § 73 ("[A] court and an administrative agency must have concurrent jurisdiction for the primary jurisdiction doctrine to apply.")). While the Fourth Circuit's ruling in *Carlton & Harris* makes clear that the Court is bound by the FCC's interpretation of the TCPA, the Court certainly has jurisdiction to review the facts of the instant case, apply the FCC's interpretation (as further clarified by the Fourth Circuit), and determine whether the Fax is an "advertisement." In considering the first two factors above, the Court would hesitate to stay the instant proceedings because the Court is capable of applying FCC and Fourth Circuit guidance to make such a determination without needing to rely on the agency's technical expertise. However, because it is not patently obvious whether, under existing FCC and Fourth Circuit precedent, the Fax was a permissible information-only transmission rather than an "unsolicited advertisement," the third and fourth

factors weigh in favor of a stay. *See* 2006 Rule at 25973 ("By contrast, facsimile communications that contain only information, such as industry news articles, legislative updates, or employee benefit information, would not be prohibited by the TCPA rules."). Defendants have petitioned the FCC to determine whether the Fax at issue herein is a prohibited advertisement. *See* ECF No. 22-4 (Defendants' FCC Petition for Expedited Declaratory Ruling); *see also Cent. Tel. Co. of Va.*, 759 F. Supp. 2d at 788 ("The fourth prong of the four-factor test outlined above contemplates that a *party* to the present suit made prior application to the FCC") (emphasis in original). Furthermore, as Defendants note, the U.S. District Court for the Southern District of Florida recently stayed a Junk Fax action pending FCC's resolution of similar questions, and the Court's interpretation herein could be inconsistent with either of the agency's forthcoming determinations. Therefore, the Court stays this action pending FCC's resolution of Defendants' Petition for Expedited Declaratory Ruling.

### D. Plaintiff's "Placeholder" Motion for Class Certification

Plaintiff submits a "Placeholder" Motion for Class Certification in an attempt to prevent Defendants from tendering individual relief to Fromer so as to moot Fromer's individual claim, thereby mooting the class action. ECF No. 4. While the Supreme Court has held that a defendant's unaccepted offer to satisfy the named plaintiff's individual claim does not moot a class action complaint, *see Campbell-Ewald Co v. Gomez*, 136 S. Ct. 663, 672 (2016), Plaintiff contends that some defendants "continue trying to devise new ways to avoid classwide liability" and request the Court to allow Plaintiff's "Placeholder" motion to remain pending to avoid such "unnecessary gamesmanship." ECF No. 3 at 2. Following *Campbell-Ewald*, the Fourth Circuit has not addressed whether plaintiffs may file such "Placeholder" motions to prevent defendants from mooting class action complaints through conduct not explicitly barred by *Campbell-Ewald*.

*See Career Counseling, Inc. v. Amsterdam Printing & Litho, Inc.*, No. 3:15-cv-05061-JMC, 2016 WL 3679345, at *2 (D.S.C. July 12, 2016) ("[T]he Fourth Circuit has not addressed . . . whether a defendant can moot a putative Rule 23 class action by picking off a named plaintiff's individual claim with a judgment offer for which funds have been tendered, or with a judgment offer that a named plaintiff accepts."). Nor has the Fourth Circuit suggested that such motions are necessary. *See id.* (noting that the court could not find any Fourth Circuit precedent to justify plaintiff counsel's concerns that without a pending placeholder motion, the named plaintiff's acceptance of an offer would necessarily moot the class action). However, because the Court will stay the case pending FCC's resolution of Defendants' Petition for Expedited Declaratory Ruling, the Court need not rule on Plaintiff's motion at this time.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 22, shall be granted in part and denied in part, and the case is stayed pending review by the FCC. A separate Order follows.

Dated: September 4, 2018                                    /s/
                                                    GEORGE J. HAZEL
                                                    United States District Judge